FILED
CLERK, U.S. DISTRICT COURT

APR 18 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEREK WHITE, | NO. CV 07-44-JVS(E) |
|          Petitioner, | |
|    v. | ORDER ADOPTING FINDINGS, |
| JAMES YATES, Warden, | CONCLUSIONS AND RECOMMENDATIONS |
|          Respondent. | OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge.  The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///

///

///

///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this

2   Order, the Magistrate Judge's Report and Recommendation and the

3   Judgment herein by United States mail on Petitioner and counsel for

4   Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED: _____ 4. 16 _____, 2008.

9

10   _____

11   JAMES V. SELNA
     UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DEREK WHITE, | ) | NO. CV 07-44-JVS(E) |
|           Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION OF |
| | ) | |
| JAMES YATES, Warden, | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
|           Respondent. | ) | |

This Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on January 3, 2007 ("Petition"), accompanied by a Memorandum of Points and Authorities ("Pet. Mem.") and Petitioner's Declaration ("Pet. Dec."). Respondent filed an Answer on May 25, 2007, alleging, <u>inter alia</u>, that some of Petitioner's claims

1    were unexhausted.  On July 16, 2007, Petitioner filed a response to

2    the Answer.

3

4        On July 25, 2007, the Court issued an "Order re Exhaustion

5    Issues," deeming the following claims to be unexhausted:

6

7        1.   Petitioner's claims that his plea was invalid because he

8    assertedly was not told that the plea agreement called for a term of

9    ten years and four months and because Petitioner allegedly did not

10   have sufficient time to consult with counsel or consider the

11   advisability of accepting the plea bargain; and

12

13       2.   Petitioner's claims that the trial court abused its

14   discretion in accepting Petitioner's plea without inquiring into

15   Petitioner's reasons for accepting the plea, and without ascertaining

16   that Petitioner's counsel allegedly had told Petitioner that

17   Petitioner would receive a sentence of seven years and four months.

18

19       The Court ordered Petitioner to file, within thirty days of the

20   date of the Order, either: (1) a document stating Petitioner's intent

21   to amend the Petition to delete and abandon Petitioner's unexhausted

22   claims; or (2) a document requesting dismissal of the entire Petition

23   without prejudice; or (3) a motion for a stay pursuant to Rhines v.

24   Weber.

25

26       On August 6, 2007, Petitioner filed an "Ex Parte Motion to Delete

27   and Abandon Exhausted Claims," indicating Petitioner's intent to

28   abandon his unexhausted claims.  On August 8, 2007, the Court issued a

2

1   minute order: (1) directing Respondent to file a Supplemental Answer

2   addressing the merits of the claims identified as exhausted in the

3   Court's "Order re Exhaustion Issues" (to the extent Respondent did not

4   previously address the merits of those claims in the Answer); and

5   (2) affording Petitioner an opportunity to file a Supplemental Reply.

6

7       On December 18, 2007, Respondent filed a Supplemental Answer.

8   On February 7, 2008, Petitioner filed "Petitioner's Response to

9   Respondent's Supplemental Answer, etc.," which the Court construes as

10  Petitioner's Supplemental Reply.

11

12                              BACKGROUND

13

14      An Amended Information charged Petitioner with two counts of

15  robbery in violation of California Penal Code section 211, two counts

16  of kidnapping for robbery in violation of California Penal Code

17  section 209(b)(1), one count of commercial burglary in violation of

18  California Penal Code section 459, and two counts of making criminal

19  threats in violation of California Penal Code section 422 (Clerk's

20  Transcript ["C.T."] 105-07).  The Amended Information further alleged

21  that: (1) Petitioner had personally used a firearm in the commission

22  of the robberies and the burglary within the meaning of California

23  Penal Code sections 12022.53(b) and 12022.5(a); and (2) Petitioner had

24  served three prior prison terms within the meaning of California Penal

25  Code section 667.5 (C.T. 105-07).  On July 22, 2004, the trial court

26  granted Petitioner's motion to set aside the two aggravated kidnapping

27  counts pursuant to California Penal Code section 995 (C.T. 133).

28  ///

                                    3

1   Voir dire commenced on September 21, 2004 (C.T. 146).   On

2   September 23, 2004, counsel gave opening statements and the

3   prosecution began presenting its case (C.T. 152).

4

5   The next day, September 24, 2004, Petitioner pleaded no contest,

6   pursuant to a plea agreement, to two counts of robbery, admitted an

7   allegation that a principal was armed with a firearm in the commission

8   of the robberies within the meaning of California Penal Code section

9   12022(a)(1), and admitted the prior prison term allegations (C.T. 154-

10   55; Reporter's Transcript of Proceedings on April 23, 2004,

11   September 20, 2004 and September 24, 2004 ["R.T."] 28-36).   On

12   October 28, 2004, the court sentenced Petitioner to a total term of

13   ten years and four months (Reporter's Transcript of Proceedings on

14   October 28, 2004 ["Sentencing R.T."] 11-12).   The sentencing court

15   also ordered Petitioner to pay a restitution fund fine of "$200 per

16   year in state prison or $2,000 pursuant to [California Penal Code

17   section] 1202.4," and imposed, but suspended, a parole revocation fine

18   of $200 (Sentencing R.T. 12).   The court also ordered Petitioner to

19   pay restitution to the two victims in the stipulated sum of $37,000

20   (Sentencing R.T. 11-12).

21

22   On appeal, Petitioner's counsel filed a "no merit" brief in the

23   California Court of Appeal pursuant to People v. Wende, 25 Cal. 3d

24   436, 158 Cal. Rptr. 839, 600 P.2d 1071 (1979) (Respondent's Lodgment

25   3).   Petitioner filed a pro se supplemental brief in the Court of

26   Appeal (Respondent's Lodgment 4).   On January 10, 2006, the Court of

27   Appeal affirmed the judgment, ruling that Petitioner's appellate

28   counsel had "fully complied with his responsibilities" and that "no

4

1  arguable issues exist[ed]" (Respondent's Lodgment 5).

2

3      Petitioner then filed a habeas corpus petition in the Los Angeles

4  County Superior Court, which that court denied on March 23, 2006

5  (Respondent's Lodgments 6, 7).  Petitioner filed a habeas corpus

6  petition in the California Court of Appeal, which that court denied on

7  April 18, 2006 (Respondent's Lodgments 8, 9).  Petitioner filed a

8  habeas corpus petition in the California Supreme Court on March 23,

9  2006 (Respondent's Lodgment 10).  On November 29, 2006, the California

10 Supreme Court denied the petition with a citation to <u>People v. Duvall</u>,

11 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 886 P.2d 1252 (1995)

12 ("<u>Duvall</u>") (Respondent's Lodgment 11).[1]

13

14                    **PETITIONER'S CONTENTIONS**

15

16      Petitioner contends:

17

18  _____

19      [1]   The citation to <u>Duvall</u> refers to the California rule
    requiring a California habeas petitioner to state fully and with
20  particularity the facts upon which relief is sought.  <u>See</u> <u>Duvall</u>,
    9 Cal. 4th at 474 (citing, <u>inter alia</u>, <u>In re Swain</u>, 34 Cal. 2d
21  300, 304, 209 P.2d 793 (1949)); <u>see also</u> <u>Gaston v. Palmer</u>, 417
    F.3d 1030, 1036-39 (9th Cir. 2005), <u>modified</u> 447 F.3d 1165 (9th
22  Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 979 (2007) (describing
    pleading requirements of <u>Duvall</u> and <u>Swain</u>).  Where the California
23  Supreme Court denies a habeas petition with citations <u>Duvall</u> or
    <u>Swain</u>, a federal habeas court must examine independently the
24  sufficiency of the petitioner's California Supreme Court
    petition, and will reach the merits of the claims only where the
25  state petition presented the claims "with as much particularity
    as is practicable."  <u>Kim v. Villalobos</u>, 799 F.2d 1317, 1320 (9th
26  Cir. 1986) ("<u>Kim</u>").  In the "Order re Exhaustion Issues," the
    Court deemed Petitioner's California Supreme Court petition to
27  have presented sufficiently the claims alleged therein under the
    <u>Kim</u> standard.
28

1.   Petitioner's trial counsel assertedly rendered ineffective assistance by:

  a.   Allegedly failing to cross-examine prosecution witnesses adequately (Pet. Mem., pp. 18-29);[2]

  b.   Allegedly coercing Petitioner to accept a plea bargain by assertedly falsely telling Petitioner, during the third day of trial, that the prosecutor had "new case law" permitting the prosecutor to refile the aggravated kidnapping charges and seek a life sentence (Pet. Mem., pp. 12-13, 16; Pet. Dec., pp. 3-5); and

  c.   Allegedly failing to investigate and subpoena potential defense witnesses concerning Petitioner's asserted sales of cellphones, and allegedly lying to potential defense witnesses to discourage them from testifying (Pet. Mem., pp. 17-18; Pet. Dec., p. 4);

2.   The order requiring Petitioner to pay restitution assertedly in excess of $39,000 allegedly violated Petitioner's plea agreement (Pet. Mem., pp. 5-11, 21-24); and

3.   The trial court allegedly erred in failing to find that Petitioner had the ability to pay restitution (Pet. Mem., pp. 27-28).

---

[2]   Although the heading of this sub-claim alleges counsel failed to "interview" prosecution witnesses, the body of the sub-claim indicates Petitioner alleges counsel failed adequately to cross-examine two of the prosecution's witnesses, a parole officer and a car painter (see Pet. Mem., pp. 18-19).

1     4.   Petitioner's appellate counsel assertedly rendered
2   ineffective assistance by:

3

4         a.   Failing to challenge on direct appeal the
5         constitutionality of the alleged "increase in the restitution
6         amount" (Pet. Mem., pp. 20-21); and

7

8         b.   Failing to raise on appeal Petitioner's claims of
9         ineffective assistance of trial counsel (Pet. Mem., p. 21);

10

11                        **STANDARD OF REVIEW**

12

13        A federal court may not grant an application for writ of habeas
14   corpus on behalf of a person in state custody with respect to any
15   claim that was adjudicated on the merits in state court proceedings
16   unless the adjudication of the claim: (1) "resulted in a decision that
17   was contrary to, or involved an unreasonable application of, clearly
18   established Federal law, as determined by the Supreme Court of the
19   United States"; or (2) "resulted in a decision that was based on an
20   unreasonable determination of the facts in light of the evidence
21   presented in the State court proceeding."  28 U.S.C. § 2254(d) (as
22   amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);
23   Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.
24   362, 405-09 (2000).

25

26        "Clearly established Federal law" refers to the governing legal
27   principle or principles set forth by the Supreme Court at the time the
28   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

                                   7

1   (2003).  A state court's decision is "contrary to" clearly established

2   Federal law if: (1) it applies a rule that contradicts governing

3   Supreme Court law; or (2) it "confronts a set of facts . . .

4   materially indistinguishable" from a decision of the Supreme Court but

5   reaches a different result.  See Early v. Packer, 537 U.S. at 8

6   (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

7

8        Under the "unreasonable application prong" of section 2254(d)(1),

9   a federal court may grant habeas relief "based on the application of a

10  governing legal principle to a set of facts different from those of

11  the case in which the principle was announced."  Lockyer v. Andrade,

12  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

13  U.S. at 24-26 (state court decision "involves an unreasonable

14  application" of clearly established federal law if it identifies the

15  correct governing Supreme Court law but unreasonably applies the law

16  to the facts).

17

18       A state court's decision "involves an unreasonable application of

19  [Supreme Court] precedent if the state court either unreasonably

20  extends a legal principle from [Supreme Court] precedent to a new

21  context where it should not apply, or unreasonably refuses to extend

22  that principle to a new context where it should apply."  Williams v.

23  Taylor, 529 U.S. at 407 (citation omitted).

24

25       "In order for a federal court to find a state court's application

26  of [Supreme Court] precedent 'unreasonable,' the state court's

27  decision must have been more than incorrect or erroneous."  Wiggins v.

28  Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

8

1   court's application must have been 'objectively unreasonable.'"   Id.

2   at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

3   1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

4

5       In applying these standards, this Court looks to the last

6   reasoned state court decision.  See Franklin v. Johnson, 290 F.3d

7   1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion

8   exists, as where a state court rejected a claim in an unreasoned

9   order, this Court must conduct an independent review to determine

10  whether the decisions were contrary to, or involved an unreasonable

11  application of, "clearly established" Supreme Court precedent.  See

12  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

13

14                              **DISCUSSION**

15

16      For the reasons discussed below, the Petition should be denied

17  and dismissed on the merits with prejudice.[3]

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  _____

26      [3]    The Court has read, considered and rejected on the
    merits all of Petitioner's contentions.  The Court discusses
27  Petitioner's principal contentions herein.

28

I.   **Petitioner's Claims of Ineffective Assistance of Trial Counsel Do Not Merit Habeas Relief.**

     A.   **Claim that Counsel Allegedly Coerced Petitioner to Accept a Plea Bargain**

          1.   **Background**

At the preliminary hearing on October 3, 2003, Eric Arm testified that, on February 12, 2003, Arm was at his recording studio business with his business partner, Brian Murphy (C.T. 39-40).  Arm said he had received telephone calls the previous evening from someone indicating an interest in buying some recording equipment (C.T. 40-42).  The next day, Petitioner and another man assertedly appeared at the studio (C.T. 42-43).  Arm allegedly had put the equipment about which the caller had inquired in the front entry, or lounge area, of the business (C.T. 43).  Petitioner allegedly said he had a tape to try out the equipment, and handed Arm the tape (C.T. 44).

Arm testified that, as he was putting the tape in the machine, he heard Petitioner say: "Shut up.  Get down on the floor" (C.T. 44).  Arm allegedly turned and saw Petitioner pointing a gun at Arm and Murphy (C.T. 44-45).  Arm said he and Murphy got face down on the floor (C.T. 45).  One of the men assertedly tied the victims up and put a towel over Arm's head (C.T. 45-46).  One of the men allegedly said: "If you guys don't shut up, I'm going to have to get the silencer" (C.T. 46).  Arm assertedly understood this comment to mean that the man was willing to put a silencer on the gun and kill the

1 | victims (C.T. 46).  Arm believed Petitioner had made this comment
2 | (C.T. 46-47).

3

4 |     According to Arm, the men asked what was behind various doors,
5 | and Arm explained the layout (C.T. 48).  The men allegedly asked Arm
6 | if anyone else was there, or if they were expecting anyone to come by,
7 | and Arm answered "no" (C.T. 48).  Arm then allegedly heard doors
8 | opening (C.T. 48).

9

10 |     The men then assertedly carried Arm and Murphy into the "live
11 | room" and put them face down on the floor (C.T. 48).  Arm said the
12 | distance to the live room was eight to ten feet (C.T. 49).  Later, the
13 | men allegedly moved the victims into an "isolation room" approximately
14 | fifteen to twenty feet from the live room (C.T. 49-50).  One of the
15 | men allegedly came in and inquired into the location of tools and
16 | whether there were any security cameras (C.T. 50).  Arm testified
17 | that, when Arm said there were no security cameras, the man said: "You
18 | better hope to God we don't find any" (C.T. 50).

19

20 |     Arm testified that, after a period of silence, Arm and Murphy got
21 | up and walked into the lounge (C.T. 51).  Arm allegedly was on the
22 | phone with a 911 operator when he heard Murphy yell: "The cops are on
23 | their way.  Get out of here." (C.T. 51).  Arm allegedly became
24 | "completely terrified" when he heard a door slam, and he dropped the
25 | phone and crawled under a desk (C.T. 51).  Arm said that the total
26 | value of the property taken was approximately $45,000 (C.T. 52).
27 | ///
28 | ///

11

1    Murphy testified that, when Petitioner told Murphy and Arm to get
2  down on the floor, Petitioner told the other man to tie the victims
3  up, and said: "I'm going to put the silencer on and do these bitches"
4  (C.T. 62).  Murphy said the other man moved Murphy from the lobby to
5  the live room, which Murphy said was a distance of "15, 20 feet" (C.T.
6  64).  According to Murphy, the distance of the second move from the
7  live room to the isolation room was "maybe 10 to 12 feet" (C.T. 65).
8
9    Murphy said that, after he and Arm arose and went to call 911,
10 Murphy saw Petitioner and told Petitioner "You guys better get out of
11 here.  We called 9-1-1" (C.T. 67).  Murphy saw Petitioner run to a
12 black or dark color Toyota truck parked in the alley and flee in the
13 truck (C.T. 67-68).
14
15    The original Information charged Petitioner with two counts of
16 kidnapping, two counts of robbery, and one count of commercial
17 burglary (C.T. 76-80).  On April 12, 2004, Petitioner's counsel filed
18 a motion to dismiss the kidnapping charges pursuant to California
19 Penal Code section 995 (C.T. 87-91).  Counsel argued that, under
20 allegedly then-applicable California law, proof of simple kidnapping
21 required proof of a "substantial movement" of the victim, and that the
22 preliminary hearing testimony showed that the perpetrators had moved
23 the victims only a short distance in order to clear a path for the
24 equipment they intended to steal (C.T. 87-91).
25
26    On May 12, 2004, the prosecution filed an Amended Information
27 charging Petitioner with two counts of kidnapping for the purpose of
28 robbery, two counts of robbery, one count of commercial burglary, and

1  two counts of making criminal threats (C.T. 105-09).  The aggravating

2  kidnapping charges carried a life sentence.  See Cal. Penal Code §

3  209(b).  On June 23, 2004, Petitioner's counsel filed a motion to

4  dismiss the aggravated kidnapping charges, arguing that the movement

5  of the victims was not substantial and did not increase the risk of

6  harm to the victims.  Counsel acknowledged that California law on the

7  asportation requirement for kidnapping for the purpose of robbery was

8  "very confusing," but relied on cases holding that the movement of a

9  robbery victim for the sole purpose of facilitating the robbery did

10 not show the requisite asportation (C.T. 105-09).  The prosecution

11 filed a written opposition to the motion (C.T. 121-29).

12

13     On July 19, 2004, the court held a hearing on the motion (C.T.

14 131).  The record does not contain the transcript of the hearing, but

15 does reflect that the court granted the motion and dismissed the two

16 aggravated kidnapping counts on July 22, 2004 (C.T. 133).  On that

17 same date, the California Court of Appeal, Second Appellate District,

18 issued its decision in People v. Aguilar, 120 Cal. App. 4th 1044, 16

19 Cal. Rptr. 3d 231 (2004) ("Aguilar").

20

21     Voir dire commenced on September 21, 2004 (C.T. 146).  On

22 September 23, 2004, counsel made opening statements and the

23 prosecution began presenting its case, calling several witnesses,

24 including Arm (C.T. 152).  The record does not contain a transcript of

25

26

27

28

1  these proceedings.[4]

2

3      As indicated above, September 24, 2004, pursuant to a plea

4  agreement, Petitioner pled no contest to the two robbery counts,

5  admitted the allegations that a principal was armed with a firearm in

6  the commission of the offenses, and admitted three prior prison term

7  allegations (R.T. 28-35).

8

9      2.    **Governing Legal Standards**

10

11     "A guilty plea operates as a waiver of important rights, and is

12  valid only if done voluntarily, knowingly, and intelligently, with

13  sufficient awareness of the relevant circumstances and likely

14  consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (citation

15  and internal quotations omitted).  "A plea is 'involuntary' if it is

16  the product of threats, improper promises, or other forms of wrongful

17  coercion [citation], and it is 'unintelligent' if the defendant is

18  without the information necessary to assess intelligently 'the

19  advantages and disadvantages of a trial as compared with those

20  attending a plea of guilty.'" United States v. Hernandez, 203 F.3d

21  614, 618-19 (9th Cir. 2000) (citations and footnote omitted).

22  Where a petitioner has entered a plea upon the advice of counsel, the

23  voluntariness of the plea depends on whether counsel provided

24

25      [4]    Although the Supplemental Answer refers to the trial
26  testimony, citing to a "Lodged Doc. No. 2" (see, e.g.,
    Supplemental Answer, p. 18), the record does not contain any
27  transcript of the trial.  For purposes of the Court's analysis of
    Petitioner's claims, however, the absence of a trial transcript
28  is immaterial.

14

1 effective assistance in advising the petitioner to enter the plea.

2 Hill v. Lockhart, 474 U.S. 52, 56-57 (1985).

3

4      In the context of a guilty plea, the analysis of counsel's

5 alleged ineffectiveness "depends as an initial matter, not on whether

6 a court would retrospectively consider counsel's advice to be right or

7 wrong, but on whether that advice was within the range of competence

8 demanded of attorneys in criminal cases." McMann v. Richardson, 397

9 U.S. 759, 771 (1970). In determining whether Petitioner's counsel

10 acted ineffectively, the Court employs the standards set forth in

11 Strickland v. Washington, 466 U.S. 668, 688, 694, 697 (1984)

12 ("Strickland").[5]

13

14      To establish ineffective assistance of counsel, Petitioner must

15 prove: (1) counsel's representation fell below an objective standard

16 of reasonableness; and (2) there is a reasonable probability that, but

17 for counsel's errors, the result of the proceeding would have been

18 _____

19      [5]      The Court rejects Petitioner's contention that the
presumed prejudice rule of United States v. Cronic, 466 U.S. 648
20 (1984), applies here. Petitioner alleges no actual conflict of
interest affecting counsel's capacity to give undivided loyalty
21 to his client's interests. See Stenson v. Lambert, 504 F.3d 873,
22 886 (9th Cir. 2007). No clearly established Supreme Court law
extends the presumed prejudice rule to the circumstances
23 presented here. See Mickens v. Taylor, 535 U.S. 162, 174-75
24 (2002) (declining to approve application of presumed prejudice
rule to conflicts other than those caused by joint
25 representation); Stenson v. Lambert, 504 F.3d at 886 (no clearly
established Supreme Court law holds that a disagreement between
26 defendant and his counsel creates an actual conflict of interest
within the meaning of Cronic); Foote v. Del Papa, 492 F.3d 1026,
27 1030 (9th Cir.), cert. denied, 128 S. Ct. 808 (2007) (Supreme
Court has never held that presumed prejudice rule applies to a
28 conflict between defendant and his or her counsel).

1  different.  Strickland v. Washington, 466 U.S. 668, 688, 694, 697

2  (1984) ("Strickland").  A reasonable probability of a different result

3  "is a probability sufficient to undermine confidence in the outcome."

4  Id. at 694.  To show Strickland prejudice in the context of a plea,

5  Petitioner "must show that there is a reasonable probability that, but

6  for counsel's errors, he would not have pleaded guilty and would have

7  insisted on going to trial."  See Hill v. Lockhart, 474 U.S. 52, 59

8  (1985).  The court may reject the claim upon finding either that

9  counsel's performance was reasonable or the claimed error was not

10  prejudicial.  Id. at 697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir.

11  2002) ("Failure to satisfy either prong of the Strickland test

12  obviates the need to consider the other.") (citation omitted).  For

13  purposes of habeas review under 28 U.S.C. section 2254(d), Strickland

14  sets forth clearly established Federal law as determined by the United

15  States Supreme Court.  See Williams v. Taylor, 529 U.S. at 391

16  (citation and quotations omitted).

17

18      Review of counsel's performance is "highly deferential" and there

19  is a "strong presumption" that counsel rendered adequate assistance

20  and exercised reasonable professional judgment.  Williams v. Woodford,

21  384 F.3d 567, 610 (9th Cir. 2004), cert. denied, 546 U.S. 934 (2005)

22  (quoting Strickland, 466 U.S. at 689).  The court must judge the

23  reasonableness of counsel's conduct "on the facts of the particular

24  case, viewed as of the time of counsel's conduct."  Strickland, 466

25  U.S. at 690.  The court may "neither second-guess counsel's decisions,

26  nor apply the fabled twenty-twenty vision of hindsight."  Karis v.

27  Calderon, 283 F.3d 1117, 1130 (9th Cir. 2002), cert. denied, 539 U.S.

28  958 (2003) (citation and quotations omitted); see Yarborough v.

1  Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees

2  reasonable competence, not perfect advocacy judged with the benefit of

3  hindsight.") (citations omitted).  The test is "only whether some

4  reasonable lawyer . . . could have acted, in the circumstances, as

5  defense counsel acted."  Coleman v. Calderon, 150 F.3d 1105, 1113 (9th

6  Cir.) (citations and quotations omitted), rev'd on other grounds, 525

7  U.S. 141 (1998); see also Babbitt v. Calderon, 151 F.3d 1170, 1173-74

8  (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999) (relevant inquiry

9  under Strickland is not what defense counsel could have pursued, but

10  rather whether the choices made by defense counsel were reasonable)

11  (citation and quotations omitted); Morris v. California, 966 F.2d 448,

12  456-57 (9th Cir.), cert. denied, 506 U.S. 831 (1992) (if the court can

13  conceive of a reasonable tactical reason for counsel's action or

14  inaction, the court need not determine the actual explanation).

15  Petitioner bears the burden to "overcome the presumption that, under

16  the circumstances, the challenged action might be considered sound

17  trial strategy."  Strickland, 466 U.S. at 689 (citation and quotations

18  omitted).

19

20      **3.   Discussion**

21

22      Petitioner contends trial counsel assertedly "coerced" Petitioner

23  into pleading no contest by allegedly incorrectly advising Petitioner

24  that, if Petitioner did not accept the plea bargain, the Aguilar case

25  would permit the prosecutor to refile the aggravated kidnapping

26  charges and seek a life sentence.  Petitioner's contention lacks

27  merit.

28  ///

1    The dismissal of the kidnapping for robbery charges pursuant to

2  California Penal Code section 995 did not prevent the prosecution from

3  refiling the dismissed charges.  See Cal. Penal Code § 1387(a); People

4  v. Ghent, 43 Cal. 3d 739, 774, 239 Cal. Rptr. 82, 739 P.2d 1250

5  (1987), cert. denied, 485 U.S. 929 (1988); People v. Uhlemann, 9 Cal.

6  3d 662, 666-69, 108 Cal. Rptr. 657, 511 P.2d 609 (1973); De Anda v.

7  City of Long Beach, 7 F.3d 1418, 1422 & n.6 (9th Cir. 1993).  A

8  California trial court has discretion to permit the amendment of an

9  Information to allege offenses established at the preliminary hearing,

10  even during trial, as long as the defendant's substantial rights are

11  not compromised.  See People v. Jones, 164 Cal. App. 3d 1173, 1178,

12  211 Cal. Rptr. 167 (1985); Cal. Penal Code § 1009.

13

14    Counsel's fear that Aquilar could support aggravated kidnapping

15  charges against Petitioner was well-founded.  "Kidnapping for robbery,

16  or aggravated kidnapping, requires movement of the victim that is not

17  merely incidental to the commission of the robbery, and which

18  substantially increases the risk of harm over and above that

19  necessarily present in the underlying crime itself."  People v.

20  Rayford, 9 Cal. 4th 1, 12, 36 Cal. Rptr. 2d 317, 884 P.2d 1369 (1994)

21  (citations omitted; holding that the test for asportation on a charge

22  of kidnapping for robbery also applies to asportation on a charge of

23  kidnapping for the purpose of rape).  "These two aspects are not

24  mutually exclusive, but interrelated."  Id.  In determining whether

25  the movement is merely incidental to the underlying crime,

26  consideration of the "scope and nature" of the movement is necessary.

27  Id. (citation and internal quotations omitted).  "This includes

28  [consideration of] the actual distance a victim is moved."  Id.

1 | However, "there is no minimum number of feet a defendant must move a
2 | victim in order to satisfy the first prong."  Id. (citation omitted).
3 | Consideration of whether the movement subjected the victim to a
4 | substantial increase in risk of harm over and beyond that inherent in
5 | the underlying crime "includes consideration of such factors as the
6 | decreased likelihood of detection, the danger inherent in a victim's
7 | foreseeable attempts to escape, and the attacker's enhanced
8 | opportunity to commit additional crimes."  Id. at 13 (citations
9 | omitted).

10 |

11 |     In moving to dismiss the aggravated kidnapping charges,
12 | Petitioner's counsel relied on People v. Hoard, 103 Cal. App. 4th 599,
13 | 126 Cal. Rptr. 2d 855 (2002) ("Hoard") (see C.T. 113-120).  In Hoard,
14 | the defendant entered a jewelry store, displayed a gun, ordered the
15 | employees into a back office, tied them up, and began taking jewelry
16 | from the cases.  Hoard, 103 Cal. App. 4th at 602.  When one employee
17 | tried to call 911, the defendant returned to the office, threatened
18 | the employees, disabled the office phone, and left the premises.  Id.
19 | The Court of Appeal, Fourth Appellate District, held that the movement
20 | of the employees "served only to facilitate the crime with no other
21 | apparent purpose."  Id. at 607.  The court rejected case law equating
22 | an "incidental" movement with movement "necessary" to effectuate the
23 | crime.  Id. at 606-07.  The court also ruled that the movement did not
24 | substantially increase the risk of harm to the victims, because
25 | removal from the public view did not, of itself, increase the risk of
26 | harm.  Id.  The Hoard case criticized two earlier cases, People v.
27 | Salazar, 33 Cal. App. 4th 341, 39 Cal. Rptr. 2d 337 (1995) (upholding
28 | conviction for kidnapping for the purpose of rape where defendant

1   moved the victim 29 feet from an outside walkway to a motel bathroom),

2   and People v. Shadden, 93 Cal. App. 4th 164, 169, 112 Cal. Rptr. 2d

3   826 (2001) ("where a defendant moves a victim from a public place to a

4   place out of public view, the risk of harm is increased even if the

5   distance is short"; upholding conviction for kidnapping for purpose of

6   rape where defendant moved victim from front area of store in public

7   view nine feet into a closed back room).   Hoard, 103 Cal. App. 4th at

8   605-07 (opining that Salazar and Shadden courts improperly confused

9   "incidental" with "necessary").

10

11      In Aguilar, decided on the day the court in Petitioner's case

12  dismissed the aggravated kidnapping counts, the defendant pulled the

13  victim 133 feet down the sidewalk to a dark, unlit area, where he

14  sexually assaulted her. Aguilar, 120 Cal. App. 4th at 1047.   On

15  appeal, the defendant challenged the sufficiency of the evidence to

16  support his conviction for kidnapping for the purpose of rape.   The

17  defendant relied on Hoard, arguing that the movement was solely to

18  facilitate rape, and hence was incidental to rape.   Id. at 1050.

19

20      The Court of Appeal upheld the conviction, ruling that a

21  reasonable trier of fact could infer that the movement increased the

22  risk of harm to the victim by making it harder for her to escape and

23  by enhancing the opportunity to commit additional crimes.   Id. at

24  1049-50.   In so doing, the Aguilar Court criticized and declined to

25  follow Hoard.   Aguilar, 120 Cal. App. 4th at 1051-52.   The Aguilar

26  Court expressly rejected Hoard's criticism of People v. Salazar and

27  People v. Shadden.   Id.

28  ///

1   A reasonable attorney could have believed that <u>Aguilar</u> supported

2   kidnapping for robbery charges in Petitioner's case.   <u>Aguilar</u> well

3   might have led the trial court to reconsider its dismissal of the

4   aggravated kidnapping convictions, and to conclude that the evidence

5   at the preliminary hearing amply supported those charges.   Counsel

6   reasonably could have feared that, in light of <u>Aguilar</u>, Petitioner's

7   movement of the victims from the front lounge area on two occasions

8   and to two different rooms in the building (the second an "isolation

9   room"), was not incidental to the robbery, but rather was for the

10   purposes of decreasing the likelihood of detection, preventing the

11   victims from escaping, and possibly committing other crimes.

12

13   Indeed, case law subsequent to Petitioner's trial confirms the

14   reasonableness of counsel's fear.   In <u>People v. Dominguez</u>, 39 Cal. 4th

15   1141, 47 Cal. Rptr. 3d 575, 140 P.3d 866 (2006), <u>cert. denied</u>, 127 S.

16   Ct. 1491 (2007), the California Supreme Court cited <u>People v. Aguilar</u>

17   with approval as a case endorsing a "multifaceted, qualitative

18   evaluation rather than a simple quantitative assessment." <u>People v.</u>

19   <u>Dominguez</u>, 39 Cal. 4th at 1151-52.   The court upheld a conviction for

20   kidnapping for rape where the defendant moved the victim from the side

21   of the road to a spot 25 feet away and 10 to 12 feet below the level

22   of the road, where it was unlikely any passing motorist would see her.

23   <u>Id.</u> at 1151-55.   In <u>People v. Corcoran</u>, 143 Cal. App. 4th 272, 279-80,

24   48 Cal. Rptr. 3d 851 (2006), the court upheld a conviction for

25   kidnapping for robbery, where, after aborting their robbery plans, the

26   defendants moved the victims 10 feet to an office under threat of

27   death.   The court distinguished the case before it from <u>People v.</u>

28   <u>Hoard</u>, on the ground that in the instant case the movement of the

21

1   victims did not serve to facilitate the attempted robbery, but rather

2   to decrease the risk of detection and to facilitate escape.  Id. at

3   280; see also People v. James, 148 Cal. App. 4th 446, 454-55 & n.8,

4   55 Cal. Rptr. 3d 767 (2007) (rejecting argument that movement of

5   victim necessary to robbery is necessarily incidental; criticizing

6   Hoard for its asserted "logical error" in holding that, because a

7   movement unnecessary to kidnapping is not incidental thereto, the

8   inverse necessarily follows).

9

10        Given the prosecution's potential for refiling the aggravated

11  kidnapping charges, and the possibility that under Aguilar the court

12  could deem the evidence sufficient to satisfy the asportation

13  requirement for aggravated kidnapping, counsel's advice that

14  Petitioner accept a plea bargain calling for a ten-year prison term

15  rather than risk a life sentence for aggravated kidnapping was

16  reasonable advice.   Petitioner has failed to show counsel

17  ineffectively "coerced" Petitioner to plead no contest.

18

19        **B.   <u>Claims of Pre-plea Ineffectiveness</u>**

20

21        Petitioner contends his trial counsel assertedly failed to

22  investigate and subpoena potential defense witnesses concerning

23  Petitioner's asserted sales of cellphones, lied to potential defense

24  witnesses to discourage them from testifying, and failed to cross-

25  examine prosecution witnesses adequately (Pet. Mem., pp. 17-29; Pet.

26  Dec., p. 4).   Petitioner's plea forecloses these claims.

27  ///

28  ///

1    Under California law, the legal effect of Petitioner's no contest

2  plea was the same as that accorded to a plea of guilty.  See

3  California Penal Code § 1016; People v. Bradford, 15 Cal. 4th 1229,

4  1374-75, 65 Cal. Rptr. 2d 145, 939 P.2d 259 (1997), cert. denied, 523

5  U.S. 1118 (1998).  A habeas petitioner who pleads guilty may only

6  attack the voluntary and intelligent nature of the plea.  Tollett v.

7  Henderson, 411 U.S. 258, 267 (1973).

8

9        A plea of guilty and the ensuing conviction

10        comprehend all of the factual and legal elements

11        necessary to sustain a binding, final judgment of

12        guilt and a lawful sentence.  Accordingly, when

13        the judgment of conviction upon a guilty plea has

14        become final and the offender seeks to reopen the

15        proceedings, the inquiry is ordinarily confined to

16        whether the underlying plea was both counseled and

17        voluntary.  If the answer is in the affirmative,

18        then the conviction and the plea, as a general

19        rule, foreclose the collateral attack.

20

21  United States v. Broce, 488 U.S. 563, 569 (1989) (guilty pleas

22  foreclosed double jeopardy challenge to convictions); see also Tollett

23  v. Henderson, 411 U.S. at 267; United States v. Cazares, 121 F.3d

24  1241, 1246-48 (9th Cir. 1997) (guilty plea admits facts essential to

25  the validity of the conviction).  Petitioner's plea of no contest

26  forecloses any claims of pre-plea ineffective assistance of counsel

27  not going to the validity of the plea, including Petitioner's claims

28  that counsel assertedly failed to investigate, discouraged witnesses

from testifying, or conducted allegedly inadequate cross-examinations.
See United States v. Friedlander, 217 Fed. App'x 664 (9th Cir. 2007)
(alleged ineffectiveness in connection with suppression motions waived
by plea);[6] Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994), cert.
denied, 516 U.S. 976 (1995) (claim of ineffectiveness in failing to
prevent use of petitioner's confession at trial foreclosed by plea);
United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (claim that
counsel was ineffective during in camera hearing foreclosed by plea);
Watkins v. Valadez, 2007 WL 512442 at *10-11 (E.D. Cal. Feb. 12,
2007), report and recommendation adopted, 2007 WL 776714 (E.D. Cal.
Mar. 12, 2007) (claims that counsel ineffectively failed to challenge
legality of arrest and failed to file a motion to dismiss pursuant to
California Penal Code section 995 foreclosed by plea); Rodgers v.
Finn, 2006 WL 3114303 at *6 (E.D. Cal. Nov. 1, 2006), report and
recommendation adopted, 2007 WL 177888 (E.D. Cal. Jan. 23, 2007)
(claim that counsel failed to investigate alibi defense foreclosed by
plea); United States v. Chavez, 2002 WL 31971945 at *3-4 (D. Or.
July 3, 2002) (alleged failure to file pretrial motions, to
investigate, to request discovery, and to cross-examine arresting
officers foreclosed by plea).

C.   **Conclusion**

For all of the foregoing reasons, Petitioner has failed to show
he received constitutionally ineffective assistance of counsel.

---

[6]   The Court may cite unpublished Ninth Circuit opinions
issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir.
Rule 36-3(b); Fed. R. App. P. 32.1(a).

1   Therefore, the state courts' rejection of Petitioner's claims of

2   ineffective assistance of trial counsel was not contrary to, or an

3   objectively unreasonable application of, any clearly established

4   Federal law as determined by the United States Supreme Court.  See 28

5   U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on

6   these claims.

7

8   II.  **Petitioner's Claim that the Trial Court Violated the Plea**

9        **Agreement By Ordering Restitution to the Victims Does Not Merit**

10       **Habeas Relief.**

11

12       A.   **Introduction**

13

14       In 1982, the voters passed Proposition 8, the Victims' Bill of

15   Rights.  Among other things, this Proposition amended the California

16   Constitution to provide that it is the "unequivocal intention of the

17   People of the State of California that all persons who suffer losses

18   as a result of criminal activity shall have the right to restitution

19   from the persons convicted of the crimes for losses they suffer," and

20   that restitution "shall be ordered from the convicted persons in every

21   case, regardless of the sentence or disposition imposed, in which a

22   crime victim suffers a loss, unless compelling and extraordinary

23   reasons exist to the contrary."  Cal. Const., Art. I, § 28).

24   California Penal Code section 1202.4 implements this constitutional

25   provision.  See People v. Allen, 88 Cal. App. 4th 986, 989-95, 106

26   Cal. Rptr. 3d 253 (2001) (describing legislative history).

27   ///

28   ///

25

1        California Penal Code section 1202.4(a)(1) expresses the intent

2   of the Legislature "that a victim of a crime who incurs any economic

3   loss as a result of the commission of a crime shall receive

4   restitution directly from any defendant convicted of that crime."  The

5   section provides that, in addition to any other penalty provided or

6   imposed by law, the court "shall order" the defendant to pay both:

7   (a) a restitution fine; and (b) restitution to the victim or victims.

8   Cal. Penal Code § 1202.4(a)(3).

9

10       With respect to a restitution _fine_, the court "shall impose" such

11   a fine unless the court finds "compelling and extraordinary reasons"

12   for not doing so, and states those reasons on the record.  Cal. Penal

13   Code §§ 1202.4(b), (c).  The amount of the restitution fine "shall be

14   set at the discretion of the court and commensurate with the

15   seriousness of the offense," but shall not be less than $200 nor more

16   than $10,000.  Cal. Penal Code § 1202.4(b)(1).  The court may

17   determine the amount of the fine as the product of $200 times the

18   number of years of imprisonment, multiplied by the number of felony

19   counts of which the defendant is convicted.  Cal. Penal Code §

20   1202.4(b)(2).  A defendant's inability to pay "shall not be considered

21   a compelling and extraordinary reason not to impose a restitution

22   fine," but may be considered in determining the amount of the fine.

23   Cal. Penal Code §§ 1202.4(c), (d).  "[A] restitution fine is mandatory

24   even in the absence of a crime victim."  People v. Hanson, 23 Cal. 4th

25   355, 362, 97 Cal. Rptr. 2d 58, 1 P.3d 650 (2000) (citations omitted).

26   The restitution fine is deposited in the Restitution Fund in the State

27   Treasury.  See Cal. Penal Code § 1202.4(e).  The California Victims'

28   Compensation Board is authorized to pay claims with monies deposited

1  in the Restitution Fund.  See Cal. Gov't Code § 13950 et seq.

2

3      With respect to restitution to the victim, "victim restitution is

4  mandated by both the Constitution and section 1202.4."  People v.

5  Rowland, 51 Cal. App. 4th 1745, 1751, 60 Cal. Rptr. 2d 351 (1997)

6  (citations omitted).  Section 1202.4(f) provides that the court "shall

7  require" that the defendant pay such restitution to the victim, in an

8  amount based on the amount of loss claimed by the victim.  Cal. Penal

9  Code § 1202.4(f).  The amount of restitution includes "[f]ull or

10 partial payment for the value of stolen or damaged property."  Cal.

11 Penal Code § 1202.4(f)(3)(A).  "The court shall order full restitution

12 unless it finds compelling and extraordinary reasons for not doing so,

13 and states them on the record."  Cal. Penal Code §§ 1202.4(f), (g).

14 "A defendant's inability to pay shall not be considered a compelling

15 and extraordinary reason not to impose a restitution order, nor shall

16 inability to pay be a consideration in determining the amount of a

17 restitution order."  Cal. Penal Code § 1202.4(g).  If the court fails

18 to order victim restitution where appropriate, "the sentence is

19 invalid."  People v. Rowland, 51 Cal. App. 4th at 1751 (trial court

20 did not err in ordering victim restitution at resentencing; original

21 sentence which did not order such restitution was invalid).

22

23     California Penal Code section 1202.45 provides that, in every

24 case where the sentence includes a period of parole, a court "shall at

25 the time of imposing the restitution fine . . . assess an additional

26 parole revocation fine."  The parole revocation fine shall be

27 suspended unless parole is revoked.  Id.

28 ///

27

1  Thus, California law provides for three different assessments:

2  (1) a "restitution _fine_"; (2) "restitution" paid _to the victim_; and

3  (3) a parole revocation fine.  _See_ _Yandell v. Horel_, 2007 WL 1033471

4  at *3 (N.D. Cal. Apr. 4, 2007).[7]

5

6  **B.   Factual Background**

7

8  On September 24, 2004, during trial, the court expressed its

9  understanding that the parties had reached a disposition (R.T. 28).

10  The court indicated that the prosecution would allege that a principal

11  was armed with a firearm with respect to each of the robbery counts,

12  and that Petitioner would enter a no contest plea to the robbery

13  counts, admit the new firearm allegations, admit three prior prison

14  term allegations, and receive a prison sentence of ten years and four

15  months (R.T. 28).  The court indicated that it would defer the issue

16  of custody credits pending the receipt of more information (R.T. 28-

17  29).  The following then occurred:

18

19       THE COURT:  .  .  .

20

21       There will be a restitution fund fine and a parole

22       revocation fine with regard to restitution in this matter.

23       Is there any expectation that the People have that the

24  _____

25       [7]   California Penal Code section 1202.4(a)(2) also
    provides for a fine in the form of a penalty assessment on any
26  underlying fine imposed for the offense.  Restitution fines,
    victim restitution and parole revocation fines are not subject to
27  this assessment.  _See_ Cal. Penal Code § 1202.4(e); _People v._
    _Allen_, 88 Cal. App. 4th at 992-93.  In Petitioner's case the
28  court did not impose any such penalty assessment.

1    defendant is going to be able to pay restitution in this

2    case?[8]

3

4         [THE PROSECUTOR]:   No, but I'd like it ordered.

5

6         THE COURT:   I'll order restitution, but realistically

7    based on the nature of this theft, realistically there's

8    going to be no restitution paid.

9

10        The parole revocation fine and the restitution fund

11   fine, the minimum is $200, the maximum is $10,000.   I'll

12   award an amount that's commensurate with what's instructed

13   in the Code.   I'll take a look at it and then I'll let you

14   know.

15

16        Do you understand the agreement, Mr. White?

17

18        THE DEFENDANT:   Yes.

19

20        THE COURT:   Have I stated the agreement accurately in

21   accordance with the perception of the defendant?

22

23        [PETITIONER'S COUNSEL]:   Yes.

24   _____

25        [8]   The transcript's punctuation of these two sentences
     appears to be erroneous.   Without the apparent punctuation
26   errors, sentences would read: "There will be a restitution fund
     fine and a parole revocation fine.   With regard to restitution in
27   this matter, is there any expectation that the people have that
     the defendant is going to be able to pay restitution in this
28   case?"

1  (R.T. 29-30).  Petitioner then waived his rights (R.T. 30-32).  The

2  court advised Petitioner that the minimum restitution fine was $200,

3  that the maximum was $10,000, and that the court would "pick an amount

4  commensurate with what is set forth in the Code somewhere in the

5  ranges between the $200 and $10,000" (R.T. 32).  Petitioner then

6  pleaded no contest to the two robbery counts, admitted the firearm

7  enhancement allegations, and admitted the prior prison term

8  allegations (R.T. 33-35).  The court found the plea valid, accepted

9  the plea, and set sentencing for October 28, 2004 (R.T. 36-37).

10

11      On October 28, 2004, the prosecutor said that he had spoken with

12  Petitioner's counsel and that Petitioner's counsel had "agreed that

13  $37,000 would be the stipulated amount for restitution paid to the

14  victims" (Sentencing R.T. 2).  The court sentenced Petitioner to a

15  term of ten years and four months pursuant to the plea agreement

16  (Sentencing R.T. 11).  The court ordered Petitioner to pay a

17  restitution fund fine of "$200 per year in state prison or $2,000

18  pursuant to [California Penal Code section] 1202.4," and imposed, but

19  suspended, a parole revocation fine of $200 (Sentencing R.T. 12).  The

20  court ordered Petitioner to pay restitution to the two victims in the

21  stipulated sum of $37,000 (Sentencing R.T. 12).  The court informed

22  Petitioner of his appellate rights, and asked whether he understood

23  those rights (Sentencing R.T. 12-13).  Petitioner answered: "Yes."

24  (Sentencing R.T. 13).  The court asked Petitioner if he understood

25  that, unless his present lawyer was going to file a notice of appeal,

26  it was Petitioner's obligation to do so within sixty days (Sentencing

27  R.T. 13-14).  Petitioner answered: "Yes." (Sentencing R.T. 14).  The

28  court said:  "Any questions?" (Sentencing R.T. 14).  Petitioner

1 | answered: "No." (Sentencing R.T. 14).

2

3 | **C.   <u>Discussion</u>**

4

5 | Petitioner contends the trial court breached the plea agreement

6 | by ordering Petitioner to pay $37,000 in restitution to the victims

7 | (Pet. Mem., pp. 5-7, 22; Supplemental Reply, pp. 4-5).  Petitioner

8 | asserts he agreed, in the plea agreement, only to pay a restitution

9 | fine in an amount between $200 and $10,000.  This claim lacks merit.

10

11 | When a guilty plea rests in any significant degree on an

12 | agreement with the government, the agreement must be fulfilled.

13 | <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971); <u>Gunn v. Ignacio</u>, 263

14 | F.3d 965, 969 (9th Cir. 2001).  The party asserting breach bears the

15 | burden of proving the underlying facts establishing a breach.  <u>See</u>

16 | <u>United States v. Laday</u>, 56 F.3d 24, 26 (5th Cir. 1995); <u>United States</u>

17 | <u>v. Packwood</u>, 848 F.2d 1009, 1011 (9th Cir. 1988).  "Plea agreements

18 | are contractual in nature and are measured by contract law standards."

19 | <u>Brown v. Poole</u>, 337 F.3d 1155, 1159 (9th Cir. 2003) (citation and

20 | quotations omitted).

21

22 | If the language of a plea agreement is clear, that language

23 | governs.  <u>People v. Shelton</u>, 37 Cal. 4th 759, 767, 37 Cal. Rptr. 3d

24 | 354, 125 P.3d 290 (2006) (citation omitted).  If the terms are

25 | ambiguous, the agreement "must be interpreted in the sense in which

26 | the promisor believed, at the time of making it, that the promisee

27 | understood it."  <u>Id.</u> (citations and internal quotations omitted).  In

28 | interpreting a plea agreement, "[t]he mutual intention to which the

1 courts give effect is determined by objective manifestations of the

2 parties' intent, including the words used in the agreement, as well as

3 extrinsic evidence of such objective matters as the surrounding

4 circumstances under which the parties negotiated or entered into the

5 contract; the object, nature and subject matter of the contract; and

6 the subsequent conduct of the parties." Id. (citations and internal

7 quotations omitted).  "[T]he critical consideration is whether the

8 challenged [term] was within the defendant's contemplation and

9 knowledge when he entered his plea." People v. Knox, 123 Cal. App.

10 4th 1453, 1460, 20 Cal. Rptr. 3d 877 (2004) (citation and internal

11 quotations omitted).

12

13     Contrary to Petitioner's assertions, the record shows that the

14 plea agreement contemplated a sentence that would include victim

15 restitution.  Prior to taking the plea, the court indicated it would

16 impose: (1) a restitution fund fine in a sum between $200 and $10,000;

17 (2) a parole revocation fine; and (3) victim restitution.  The court

18 first told Petitioner there would be a restitution fine and a parole

19 revocation fine (R.T. 29).  The court then stated it would order

20 "restitution," noting that "[r]ealistically" there would be no

21 restitution paid (R.T. 29).[9]  The court next stated that the amount of

22 both the restitution fine and the parole revocation fine would be

23 between $200 and $10,000 (R.T. 29-30).  The court did not say that the

24 "restitution" it would order based on the theft was so limited in

25 amount.  Although there is some arguable ambiguity in the record, it

26 _____

27     [9]    The court did not say Petitioner lacked the ability to
pay, but only expressed the view that the restitution would not
28 be paid.

1  seems apparent that the "restitution" referenced by the court was

2  victim restitution.   Indeed, because victim restitution was mandated

3  by the California Constitution and by statute, the parties could not

4  dispense with victim restitution in a plea agreement.   See People v.

5  McClellan, 6 Cal. 4th 367, 380, 24 Cal. Rptr. 2d 739, 862 P.2d 739

6  (1993) (statutorily mandated sex offender registration requirement

7  "was an inherent incident of defendant's decision to plead guilty . .

8  . and was not added 'after' the plea agreement was reached"); People

9  v. Walker, 54 Cal. 3d 1013, 1027-29, 1 Cal. Rptr. 2d 902, 819 P.2d 861

10  (1991) (because restitution fine is mandated by statute, remedy for

11  breach of plea agreement which did not include any agreement to pay

12  restitution fine is to reduce fine to the statutory minimum, where

13  breach issue is first raised after sentencing); People v. Rowland,

14  51 Cal. App. 4th at 1751-52 ("victim restitution is mandatory and a

15  sentence without such an award is unlawful").

16

17       The subsequent words and conduct of the attorneys and Petitioner

18  confirm the understanding that a sentence under the plea agreement

19  would include victim restitution.   See People v. Dickerson, 122 Cal.

20  App. 4th 1374, 1385, 19 Cal. Rptr. 3d 545 (2004) (failure of defendant

21  or his attorney to object to restitution fine at sentencing showed

22  imposition of fine did not violate plea agreement).   Prior to taking

23  Petitioner's plea, the court asked if it had omitted anything, and

24  both the prosecutor and Petitioner's counsel answered in the negative

25  (R.T. 30).   As indicated above, Petitioner affirmed that he was

26  entering the plea freely and voluntarily, and did not raise the issue

27  of victim restitution.   At sentencing, neither Petitioner nor his

28  attorney objected when the prosecutor told the court that Petitioner's

1  counsel had stipulated to victim restitution in the sum of $37,000

2  (see Sentencing R.T. 2).  Neither Petitioner nor his counsel objected

3  when the court imposed the $37,000 victim restitution.  When the court

4  questioned Petitioner concerning whether he understood his appellate

5  rights, Petitioner did not raise the issue of the $37,000 victim

6  restitution.  At the conclusion of the proceedings, when the court

7  asked Petitioner if he had any questions, Petitioner answered: "No."

8  (Sentencing R.T. 14).

9

10      Under these circumstances, the record shows Petitioner pled no

11  contest with the objective understanding that the court would impose

12  victim restitution.  Dubious allegations of contrary subjective

13  expectations are irrelevant.  See Buckley v. Terhune, 441 F.3d 688,

14  695 (9th Cir. 2006), cert. denied, 127 S. Ct. 2094 (2007) (in

15  determining intent of parties with respect to plea bargain, "the

16  relevant intent is objective, . . . not a party's subjective intent")

17  (citations and quotations omitted); Calabrese v. United States, 507

18  F.2d 259, 260 (1st Cir. 1974) (unless the defendant affirmatively was

19  misled by the prosecutor, or the court failed to inquire sufficiently

20  regarding the plea, the court "cannot look into the subjective mental

21  set of [the defendant] to see to what extent misconceptions [regarding

22  the sentence] played a part in his guilty plea"); United States ex

23  rel. Curtis v. Zelker, 466 F.2d 1092, 1098 (2d Cir. 1972), cert.

24  denied, 410 U.S. 945 (1973) ("subjective mistaken impression" does not

25  require withdrawal of plea; "to justify the issuance of a federal writ

26  vacating his guilty plea, the petitioner must bear the burden of

27  showing that the circumstances as they existed at the time of the

28  plea, judged by objective standards, reasonably justified his mistaken

impression") (emphasis added); <u>United States v. Collado-Gomez</u>, 674 F.
Supp. 426, 428 (E.D.N.Y. 1987), <u>aff'd</u>, 854 F.2d 1315 (2d Cir. 1988)
(defendant's subjective mistaken belief "unsupported by any promise
from the government or indications from the Court is insufficient to
invalidate a guilty plea"); <u>In re Honesto</u>, 130 Cal. App. 4th 81, 92,
29 Cal. Rptr. 3d 653 (2005) ("[a] plea agreement violation claim
depends upon the actual terms of the agreement, not the subjective
understanding of the defendant"); <u>see generally</u> 16A Fed. Proc. L. Ed.
§ 41:435 (2007) ("the applicant's subjective belief as to the severity
of the sentence, unsupported by any promises from the government or
indications from the court" cannot support collateral relief)
(footnote omitted).


        Although, as indicated above, the law precludes parties from
agreeing that no victim restitution will be ordered, the parties may
negotiate concerning the amount of restitution. <u>See</u> <u>People v.</u>
<u>Crandell</u>, 40 Cal. 4th 1301, 1309, 57 Cal. Rptr. 3d 349, 156 P.3d 364
(2007), <u>cert. denied</u>, 128 S. Ct. 258 (2007); <u>People v. Walker</u>, 54 Cal.
3d at 1027-28.  Nothing in the record shows the parties agreed, in the
plea agreement, to any specific amount of, or cap on, victim
restitution.[10]  Despite Petitioner's apparent contention to the
contrary, the court clearly informed Petitioner that the amount of the
restitution <u>fine</u> was limited to a maximum of $10,000.  Neither the
court nor the attorneys said anything concerning a limit on the amount

────────────────

        [10]    Petitioner's argument that the parties agreed to a
$10,000 cap on victim restitution confuses the restitution fine,
which was subject by law to such a cap, with victim restitution,
which was not.

of victim restitution.  By statute, the court was required to order
"full" victim restitution in the absence of "compelling and
extraordinary" reasons not to do so.  See Cal. Penal Code § 1202.4(g).
The parties evidently intended the amount of restitution to be set by
the court or (as eventually occurred) by stipulation.  See People v.
Crandell, 40 Cal. 4th at 1309-10 (no breach of plea agreement where
record showed the parties intended to leave the amount of restitution
fine to the discretion of the court; court "flatly informed" defendant
that he would be ordered to pay victim restitution); People v. Knox,
123 Cal. App. 4th at 1461 (fact that precise amount of restitution
fine was not specified prior to entry of plea showed defendant
recognized the amount of the fine would be left to the sentencing
judge).[11]

In sum, the imposition of victim restitution in the sum of
$37,000 did not violate Petitioner's plea agreement.  Therefore, the
state courts' rejection of this claim was not contrary to, or an
objectively unreasonable application of, any clearly established
Federal law as determined by the United States Supreme Court.  See 28
U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on his
claim alleging a breach of his plea agreement.

///

///

///

---

[11]   Petitioner's related contention that he lacked notice
that the victim restitution could exceed $10,000 is without
merit.  Petitioner knew, from Arm's preliminary hearing testimony
if from no other source, that the claimed value of the stolen
property was approximately $45,000 (C.T. 52).

36

III. **Petitioner's Claim that the Trial Court Improperly Failed to Determine Petitioner's Ability to Pay Restitution Does Not Merit Habeas Relief.**

Petitioner contends that the trial court violated state law by failing to make findings regarding Petitioner's ability to pay restitution, and by failing <u>sua sponte</u> to order a hearing on Petitioner's ability to pay (Pet. Mem., pp. 27-28).  For several reasons, these claims do not warrant habeas relief.

First, a state prisoner may obtain federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A restitution order does not satisfy section 2254(a)'s "in custody" requirement.  <u>Dremann v. Francis</u>, 828 F.2d 6, 7 (9th Cir. 1987) (fine); <u>Flores v. Hickman</u>, ___ F. Supp. 2d ___, 2008 WL 342748 at *13 (C.D. Cal. Jan. 25, 2008) (victim restitution order); <u>Cejas v. Yates</u>, 2008 WL 115387 at *1 (E.D. Cal. Jan. 10, 2008), <u>report and recommendation adopted</u>, 2008 WL 483329 (E.D. Cal. Feb. 20, 2008) (restitution fine); <u>Tucker v. Carey</u>, 2006 WL 902565 at *1 (E.D. Cal. Apr. 5, 2006), <u>report and recommendation adopted</u>, 2006 WL 2601427 (E.D. Cal. Sept. 11, 2006) (challenge to victim restitution order on grounds that court did not hold hearing and that petitioner had no ability to pay restitution); <u>see also</u> <u>United States v. Thiele</u>, 314 F.3d 399, 401-02 (9th Cir. 2002), <u>cert. denied</u>, 540 U.S. 839 (2003) (challenge to restitution order does not satisfy "in custody" requirement of 28 U.S.C. section 2255; court may not entertain such a claim, regardless of whether movant asserts other cognizable claims).

37

1  As Petitioner is not "in custody" by reason of the restitution orders,
2  this Court lacks habeas jurisdiction to entertain a challenge to those
3  orders.  See 28 U.S.C. § 2254(a).

4

5       Second, federal habeas corpus relief may be granted "only on the
6  ground that [Petitioner] is in custody in violation of the
7  Constitution or laws or treaties of the United States."  28 U.S.C. §
8  2254(a).  Mere errors in the application of state law are not
9  cognizable on habeas corpus.  Estelle v. McGuire, 502 U.S. 62, 67-68
10 (1991).  Matters relating to sentencing and serving of a sentence
11 generally are governed by state law and do not raise a federal
12 constitutional question.  See Miller v. Vasquez, 868 F.2d 1116, 1118-
13 19 (9th Cir. 1989) (holding that question of whether particular prior
14 conviction qualifies for sentence enhancement under California law is
15 not cognizable on federal habeas corpus); see also Middleton v. Cupp,
16 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021
17 (1986) (federal habeas relief "unavailable for alleged error in the
18 interpretation or application of state law"); Sturm v. California
19 Adult Authority, 395 F.2d 446, 448 (9th Cir. 1967), cert. denied, 395
20 U.S. 947 (1969) ("a state court's interpretation of its [sentencing]
21 statute does not raise a federal question").  "[S]tate courts are the
22 ultimate expositors of state law."  Mullaney v. Wilbur, 421 U.S. 684,
23 691 (1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th
24 Cir.), cert. denied, 493 U.S. 942 (1989).  Petitioner's claims that
25 the trial court committed state law error in issuing the restitution
26 orders state no cognizable claim for federal habeas relief.  See Ortiz
27 v. Henry, 2006 WL 2845649 at *8 (N.D. Cal. Oct. 2, 2006) (challenge to
28 restitution order not cognizable on federal habeas review); Tucker v.

1  Carey, 2006 WL 902565 at *2 (challenge to victim restitution order on

2  grounds that court did not hold hearing and that petitioner had no

3  ability to pay restitution alleged only state law claims not

4  cognizable on federal habeas review).

5

6      Under narrow circumstances, however, the misapplication of state

7  sentencing law may violate due process.  See Richmond v. Lewis, 506

8  U.S. 40, 50 (1992).  "[T]he federal, constitutional question is

9  whether [the error] is so arbitrary or capricious as to constitute an

10 independent due process" violation.  Id. (internal quotation and

11 citation omitted); see also Christian v. Rhode, 41 F.3d 461, 469 (9th

12 Cir. 1994) ("Absent a showing of fundamental unfairness, a state

13 court's misapplication of its own sentencing laws does not justify

14 federal habeas relief.").

15

16     No such fundamental unfairness occurred here.  As indicated

17 above, by statute Petitioner's ability to pay the restitution fine and

18 victim restitution was irrelevant to the issue whether a restitution

19 fine or victim restitution was appropriate.  Cal. Penal Code §§ 1202.4

20 (c), (d), (g).  Petitioner's ability to pay was relevant to the issue

21 of the amount of the restitution fine, but was not relevant to the

22

23

24

25

26

27

28

1  issue of the amount of the victim restitution.  Id.[12]  The court had

2  no obligation to make any express findings concerning Petitioner's

3  ability to pay in determining the amount of the restitution fine.  See

4  Cal. Penal Code § 1202.4(d) ("Express findings by the court as to the

5  factors bearing on the amount of the [restitution] fine shall not be

6  required."); People v. Lawson, 69 Cal. App. 4th 29, 38 n.7, 81 Cal.

7  Rptr. 2d 283 (1999).[13]  The court had no obligation to hold a separate

8  hearing on the restitution fine.  See Cal. Penal Code § 1202.4(d) ("A

9  separate hearing for the fine shall not be required.").[14]  Although

10  Petitioner could have requested a hearing on the amount of victim

11  restitution, see Cal. Penal Code § 1202.4(f)(1), the court could not

12  consider Petitioner's ability to pay in determining that amount.  See

13

14

15  _____

16  [12]    People v. Hartley, 163 Cal. App. 3d 126, 209 Cal. Rptr.
   131 (1984), cited by Petitioner, concerned restitution imposed as
17  a condition of probation under former California Penal Code
   section 1203.04.  In 1995, the California Legislature repealed
18  section 1203.04 and incorporated its subject matter into
   California Penal Code section 1202.4.  See People v. Birkett, 21
19  Cal. 4th 226, 231 n.2, 87 Cal. Rptr. 2d 205, 980 P.2d 912 (1999).
   As indicated above, California Penal Code section 1202.4(g)
20  expressly provides that ability to pay may not be considered in
   determining whether to impose victim restitution, thus
21  superseding any alleged statement to the contrary in cases such
   as People v. Hartley.
22
   [13]    Notably, the court did not impose anywhere near the
23  maximum possible restitution fine of $10,000, suggesting the
   court did consider Petitioner's ability to pay in setting the
24  restitution fine at $2,000.

25  [14]    Section 1202.4(d) establishes a presumption that the
26  defendant has the ability to pay, and places the burden on the
   defendant to show a lack of ability.  See People v. Romero, 43
27  Cal. App. 4th 440, 449, 51 Cal. Rptr. 2d 26 (1996).  Petitioner
   never attempted to show the sentencing court that he lacked the
28  ability to pay the restitution fine.

Cal. Penal Code § 1202.4(g).[15]  Therefore, Petitioner has not shown the court erred in the manner suggested by Petitioner.

For all of the foregoing reasons, the state courts' rejection of this claim was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

## IV.  Petitioner's Claims of Ineffective Assistance of Appellate Counsel Do Not Merit Habeas Relief.

The standards set forth in Strickland govern claims of ineffective assistance of appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir. 2001), cert. denied, 535 U.S. 995 (2002).  "A failure to raise untenable issues on appeal does not fall below the Strickland standard."  Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002); see Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001) (appellate counsel's failure to raise an issue on direct appeal cannot constitute ineffective assistance when "appeal would not have provided grounds for reversal.").

///

---

[15]    Although the Constitution may prevent a state from incarcerating a defendant for failure to pay court-ordered restitution which the defendant in good faith has no ability to pay, see Bearden v. Georgia, 461 U.S. 660, 668-69 (1983), Petitioner was not incarcerated for failure to comply with any such order.

1    Petitioner faults appellate counsel for failing to raise on

2  appeal the claim that the trial court assertedly violated the plea

3  agreement by ordering Petitioner to pay $37,000 in restitution to the

4  victim.  Petitioner attaches to his Supplemental Reply a letter from

5  appellate counsel, dated January 31, 2006, in which appellate counsel

6  advised Petitioner that it was too late to challenge the victim

7  restitution order on appeal, and that Petitioner probably could not do

8  so anyway because he agreed to the amount (Supplemental Reply, Ex. B,

9  pp. 2-3).  Appellate counsel also cautioned Petitioner against raising

10  any such claim in a habeas corpus petition, opining that if Petitioner

11  won, the Supreme Court likely would order the entire plea withdrawn,

12  exposing Petitioner to a trial and a potentially lengthy sentence

13  (id.).

14

15    For the reasons discussed in Section II above, appellate counsel

16  reasonably could conclude that Petitioner would not succeed in

17  overturning the victim restitution order because Petitioner had agreed

18  to it.  For the same reasons, Petitioner has not shown a reasonable

19  probability that, had appellate counsel raised this claim on appeal,

20  the outcome on appeal would have been any different.

21

22    Petitioner also contends appellate counsel ineffectively failed

23  to raise on appeal Petitioner's claims of ineffective assistance of

24  trial counsel, i.e., Petitioner's claims that trial counsel allegedly

25  failed to investigate and subpoena potential defense witnesses

26  concerning Petitioner's asserted sales of cellphones, allegedly lied

27  to potential defense witnesses to discourage them from testifying, and

28  allegedly conducted ineffective cross-examinations.  However,

appellate counsel reasonably could have determined that, with one possible exception discussed below, none of these claims could be brought on direct appeal.

Where analysis of a claim of ineffective assistance of trial counsel requires recourse to matters outside the appellate record, California law requires that the claim be asserted in a petition for writ of habeas corpus, not on direct appeal. <u>See, e.g.</u>, <u>People v. Mendoza Tello</u>, 15 Cal. 4th 264, 267-68, 62 Cal. Rptr. 2d 437, 933 P.2d 1134 (1997); <u>People v. Pope</u>, 23 Cal. 3d 412, 426-28, 152 Cal. Rptr. 732, 590 P.2d 859 (1979). "[B]ecause, in general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." <u>People v. Wilson</u>, 3 Cal. 4th 926, 936, 13 Cal. Rptr. 2d 259, 838 P.2d 1212 (1992), <u>cert. denied</u>, 507 U.S. 1006 (1993); <u>see also</u> <u>People v. Frye</u>, 18 Cal. 4th 894, 979-80, 77 Cal. Rptr. 2d 25, 959 P.2d 183 (1998), <u>cert. denied</u>, 526 U.S. 1023 (1999) (citations and internal quotations omitted) ("a reviewing court will reverse a conviction on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission") (citations and internal quotations omitted).

///

///

43

 1    Here, appellate counsel reasonably could have determined that

 2  claims that trial counsel failed to interview and subpoena witnesses,

 3  lied to witnesses, and failed to conduct an adequate cross-examination

 4  of a witness who allegedly painted Petitioner's Cadillac Escalade (and

 5  assertedly not the Toyota truck) would require support outside the

 6  appellate record, and hence could not be brought on direct appeal.

 7  Petitioner cannot claim ineffective assistance of appellate counsel in

 8  failing to raise these issues in a habeas corpus petition, for

 9  Petitioner enjoyed no right to counsel in state post-conviction

10  proceedings.  See Murray v. Giarratano, 492 U.S. 1, 7-10 (1989);

11  Pennsylvania v. Finley, 481 U.S. 551, 556 (1987); Wainwright v. Torna,

12  455 U.S. 586, 587-88 (1982); Cook v. Schriro, ___ F.3d ___, 2008 WL

13  441825 at *18 (9th Cir. Feb. 20, 2008).

14

15    Arguably, Petitioner's claim that trial counsel failed to cross-

16  examine a prosecution witness to elicit the admission that the witness

17  assertedly was Petitioner's parole officer would not have required

18  proof outside the appellate record.  The record shows that, prior to

19  trial, and following an unreported conference with counsel, the court

20  ruled that the parole officer could testify but neither side could

21  adduce evidence concerning what she did for a living (R.T. 20).  It is

22  unclear whether this ruling came at the request of Petitioner's

23  counsel.  In any event, however, appellate counsel reasonably could

24  have concluded that trial counsel's failure to elicit the admission

25  represented sound trial strategy.  Trial counsel reasonably could have

26  believed that it would be best for Petitioner if the jury were not

27  told (or not reminded) that Petitioner had a parole officer.

28  ///

1    For the foregoing reasons, the state courts' rejection of

2 Petitioner's claims of ineffective assistance of appellate counsel was

3 not contrary to, or an objectively unreasonable application of, any

4 clearly established Federal law as determined by the United States

5 Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

6 to habeas relief on his claims of ineffective assistance of appellate

7 counsel.

8

9                          **RECOMMENDATION**

10

11    For the foregoing reasons, IT IS RECOMMENDED that the Court issue

12 an Order: (1) approving and adopting this Report and Recommendation;

13 and (2) denying and dismissing the Petition with prejudice.

14

15        DATED:  March 21, 2008.

16

17                    _____/S/_____

                        CHARLES F. EICK
18                 UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

**NOTICE**

        Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.